UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**TRACIE HOLMES,** individually,
and on behalf of others similarly situated,

        Plaintiffs,

vs.

**KELLY SERVICES USA, LLC,** a
Michigan limited liability company,
and **KELLY SERVICES, INC.,**
a Delaware corporation,

        Defendants.

Case No. _____

Hon. _____

_____/

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff, TRACIE HOLMES, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective Action Complaint against Defendants, KELLY SERVICES USA, LLC and KELLY SERVICES, INC., and states as follows:

## INTRODUCTION

1.      This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, Tracie Holmes ("Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendants, Kelly Services USA, LLC and Kelly Services, Inc. (hereinafter referred to as "Defendants"), arising from Defendants'

willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2.     According to its website, Defendants "Kelly Services, Inc. (NASDAQ: KELYA, KELYB) and its subsidiaries, offer a comprehensive array of outsourcing and consulting services as well as world-class staffing on a temporary, temporary-to-hire, and direct-hire basis. In 2016, the Company is commemorating 70 years of industry leadership. Kelly® has a role in managing employment opportunities for more than one million workers around the globe by employing 550,000 of these individuals directly with the remaining workers engaged through its talent supply chain network of supplier partners. Revenue in 2015 was $5.5 billion." *See* http://www.kellyservices.com/Global/AboutUS/ (last visited August 31, 2016).

3.     Defendants offer call center services through a program called KellyConnect®, which is a comprehensive call center solution for its customers. Through KellyConnect, Defendants employ call center agents in a number of different environments (*e.g.*, brick-and-mortar sites and on-site at their clients' locations). *See* http://www.kellyservices.us/US/KellyConnect-WorkAtHome/ (last visited August 31, 2016).

4.     Defendants do not compensate their call center agents (hereinafter "Agents") for all work performed at the beginning of each shift in connection with starting and logging into various computer programs and applications and

subsequent to each shift in connection with shutting down and logging out of various computer programs and applications. Defendants' compensation policies result in Agents not being paid for all time worked, including overtime, in violation of the FLSA.

5.      Defendants' Agents use multiple computer programs, software programs, servers, and applications in the course of performing their job responsibilities.   These programs, servers, and applications are an integral and indispensable part of their work as they cannot perform their jobs without them.

6.      All of Defendants' Agents perform the same basic job duties and are required to use the same or similar computer programs, software programs, servers, and applications.

7.      Defendants' Agents are hourly, non-exempt employees who are typically paid a few dollars more than the federally mandated minimum wage.

8.      The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.   One of those abuses, which occurred in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."   DOL Fact Sheet #64 at p. 2.

9.      The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."  *Id*.

10.     Plaintiff was employed by Defendants as an Agent in Hampton, Virginia from August 2015 until March 2016.

11.     In order to perform her job, prior to each shift Plaintiff was required to start-up and log-in to various secure computer programs, software programs, servers, and applications in order to access the information needed to perform her job. The start-up and log-in process took substantial time on a daily basis, ranging from 5 to 10 minutes per day.

12.     At the end of each shift, Plaintiff was required to shut down and log-out of the various secure computer programs, software programs, servers, and applications that she utilized during her shift. The shutdown and log-out process took substantial time on a daily basis, ranging from 2 to 3 minutes per day.

13.     The unpaid time Plaintiff and the other Agents spent starting up and

logging into each session directly benefitted Defendants and this process was an essential part of their job responsibilities as an Agent.

14.     Likewise, the unpaid time Plaintiff and the other Agents spent shutting down and logging out of each session directly benefitted Defendants and this process was an essential part of their job responsibilities as an Agent.

15.     Plaintiff brings this action on behalf of herself and all other similarly situated call center employees to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

16.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

17.     Additionally, this Court has jurisdiction over Plaintiff's collective action claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

18.     Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendants' Agents engage in interstate commerce and therefore they are also covered by the

FLSA on an individual basis.

19.    This Court has personal jurisdiction over Defendants because Defendants' principal place of business is located within the State of Michigan, because they conduct business within the State of Michigan, and because they are registered with the Michigan Department of Licensing and Regulatory Affairs.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

## PARTIES

21.    Plaintiff, Tracie Holmes, is a resident of Newport News, Virginia, who worked for Defendants as an Agent from August 2015 to March 2016.   Ms. Holmes signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit A*.

22.    Defendant Kelly Services, Inc. is a Delaware corporation headquartered in Troy, Michigan.   Kelly Services, Inc. is licensed to do business in the State of Michigan and its registered agent for service of process in Michigan is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

23.    Defendant Kelly Services USA, LLC is a Michigan limited liability company also headquartered in Troy, Michigan.   Kelly Services USA, LLC is licensed to do business in the State of Michigan and its registered agent for service

of process in Michigan is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

## GENERAL ALLEGATIONS

24.     Plaintiff, Tracie Holmes, was employed by Defendants on a full-time basis from August 2015 to March 2016 as an Agent earning an hourly wage of $14.17 per hour.

25.     Throughout her employment with Defendants, Plaintiff regularly worked 40 hours or more per week.

26.     In order to perform her job, prior to each shift Plaintiff was required to start-up and log-in to various secure computer programs, software programs, servers, and applications in order to access the information needed to perform her job. The start-up and log-in process took substantial time on a daily basis, ranging from 5 to 10 minutes per day.

27.     At the end of each shift, Plaintiff was required to shut down and log-out of the various secure computer programs, software programs, servers, and applications that she utilized during her shift. The shutdown and log-out process took substantial time on a daily basis, ranging from 2 to 3 minutes per day.

28.     As such, Defendants fail to pay their Agents for no less than 7 to 13 minutes per day in connection with their compensable pre- and post-shift work activities.

7

29.     The unpaid time Plaintiff and the other Agents spent starting up and logging into each session directly benefitted Defendants and this process was an essential part of their job responsibilities as an Agent.

30.     Likewise, the unpaid time Plaintiff and the other Agents spent shutting down and logging out of each session directly benefitted Defendants and this process was an essential part of their job responsibilities as an Agent.

31.     Defendants recognize and acknowledge the importance of this pre- and post-shift work time in their written timekeeping policy, which states as follows:

> In a call center environment, working time that you must record *includes time you spend before, or after, your shift doing required activities such as the following*: turning on, or off, work stations, logging into, or out of, the company phone system, and initiating, or closing, software applications necessary to call-center duties. It also includes any other activities that Kelly or the customer asks you to perform or that you perform as part of your job for Kelly or the customer. (emphasis added).

32.     Nevertheless, Defendants only paid Plaintiff and other Agents for their scheduled shift time(s). A March 22, 2016 e-mail from one of Defendants' supervisors to Plaintiff and other Agents confirms this fact:

> Please keep in mind that you are able to come on the production floor at 3:50pm, so that you can get logged onto the systems Lotus, QC, and DOMA.  However; if there is a problem that will give you time to contact the help desk or Leadership if needed. You can log into In-Contact between 3:55 and 4:00pm. *Please do not log into In-Contact at 3:50pm when you arrive, you will not start getting paid until 4:00pm*.  I know when 12:00am comes around most of you are ready to go, please do not log out of In-Contact until 12:30AM. (emphasis added).

33.     Thus, Defendants knew their Agents were working off-the-clock without proper compensation and refused to pay them until the start of their scheduled shifts.

34.     Defendants knew or could have easily determined how long it takes for Agents to complete their required pre- and post-shift work, and Defendants could have properly compensated Plaintiff and the other Agents for this work, but did not.

35.     At an estimated 7 to 13 minutes per day of unpaid pre- and post-shift work, Plaintiff and all similarly situated employees are owed substantial back pay prior to liquidated damages.

36.     Some examples of specific workweeks where Defendants failed to pay Plaintiff for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

      a.     Week ending September 6, 2015:

> ➢ Plaintiff was paid for 40 hours of regular time and 0.00 hours of overtime (*Exhibit B*).

> ➢ With unpaid pre- and post-shift time of 13 minutes per shift, Plaintiff should have been paid an additional 65-78 minutes of overtime for the week. Thus, Plaintiff is entitled to overtime wages within a range of 65-78 minutes.

      b.     Week ending March 13, 2016:

> ➢ Plaintiff was paid for 40 hours of regular time and 3.00 hours of overtime (*Exhibit C*).

9

➢ With unpaid pre- and post-shift time of 13 minutes per shift, Plaintiff should have been paid an additional 65-78 minutes of overtime for the week. Thus, Plaintiff is entitled to overtime wages within a range of 65-78 minutes.

37.    At all relevant times, Defendants were Plaintiff's joint "employers" and Defendants directed Plaintiff's work and directly benefited from the unpaid and off-the-clock work Plaintiff performed.

38.    At all relevant times, Defendants controlled Plaintiff's work schedule, duties, protocols, applications, assignments, and employment conditions.

39.    At all relevant times, Defendants were able to track the amount of time—to the minute—that Plaintiff and other Agents spent in connection with the pre- and post-shift work described herein, but Defendants failed to pay Plaintiff and other Agents for this work on every shift.

40.    At all relevant times, Defendants' policies and practices deprived Plaintiff and the other Agents of wages owed for the pre- and post-shift time Plaintiff and the other Agents worked.

41.    Defendants are a leader in the field of call center services and knew or should have known that Plaintiff and other Agents' time spent starting up, logging in to, and logging out of, Defendants' computer systems, servers, and programs is compensable under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

42.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA

on her own behalf and on behalf of:

> *All current and former hourly brick-and-mortar call center agents who worked for Defendants at any time during the last three years.*

(hereinafter referred to as the "Collective").  Plaintiff reserves the right to amend this definition if necessary.

43.    Excluded from the Collective are all Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

44.    With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).  The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

45.    The employment relationship between Defendants and every Collective member are the same and differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated pre- and post-shift work time owed to each employee – does not vary substantially among the Collective members.

46.    The key legal issues are also the same for every Collective member, to

wit: whether the 7 to 13 minutes (or similar amount) of unpaid pre- and post-shift time per shift is compensable under the FLSA.

47.    Plaintiff estimates that the proposed Collective, including both current and former employees over the relevant period, includes several thousand members. The precise number of Collective members should be readily available from a review of Defendants' personnel and payroll records.

## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME
### (29 U.S.C. § 216(b) Collective Action)

48.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

49.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

50.    At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

51.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

52.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus

12

"employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

53.     At all times relevant to this action, Defendants required Plaintiff and the Collective members to perform approximately 7 to 13 minutes of pre- and post-shift work per shift, but failed to pay these employees the federally mandated overtime compensation for this work.

54.     The pre- and post-shift work performed every shift by Plaintiff and the Collective members is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

55.     In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated pre- and post-shift work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.   29 U.S.C. § 207.

56.     Plaintiff and other Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

57.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it takes for their Agents to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiff and the Collective for these work activities, but did not.

58.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation

of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a.  An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b.  An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all putative collective action members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

c.  An Order designating Plaintiff as the representative of the FLSA collective and undersigned counsel as Class counsel for the same;

d.  An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

e.  An Order declaring Defendants' violations of the FLSA were willful;

f.  An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the collective the full amount of damages and liquidated damages available by law;

g.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

h.      An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Tracie Holmes, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:   September 1, 2016

*/s/ Jesse L. Young*
Jason J. Thompson (P47184)
Kevin J. Stoops (P64371)
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com

Timothy J. Becker   MN Bar No. 256663
Jacob R. Rusch   MN Bar No. 391892
JOHNSON BECKER, PLLC
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
(612) 436-1800
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiffs*