UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACIE HOLMES,

    Plaintiff,

v.

KELLY SERVICES USA, LLC *et al*.

    Defendants.
_____/

Case No. 16-cv-13164
Hon. Matthew F. Leitman

## ORDER DENYING DEFENDANTS' MOTIONS TO STAY CONSIDERATION OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION (ECF #47, 49)

Plaintiff Tracie Holmes ("Holmes") is a former call center agent allegedly jointly employed by Defendants Kelly Services USA, LLC ("Kelly Services") and Health Net Federal Services, LLC ("Health Net") (collectively, "Defendants"). In this putative collective action, Holmes alleges that the Defendants violated the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA"), when they failed to compensate her and the other employees at her call center for all of the time they spent working. (*See*, *e.g.*, First Am. Compl. at ¶5, ECF #34 at Pg. ID 834.)

On January 20, 2017, Holmes asked the Court to conditionally certify her proposed FLSA collective so that she could send notice of this action to potential members of the collective (the "Certification Motion"). (*See* ECF #40.) Defendants have now requested that the Court stay consideration of the

1


Certification Motion pending decisions from the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit that Defendants insist could moot this action in its entirety (the "Stay Motions"). (*See* ECF ## 47, 49.) For the reasons that follow, the Court **DENIES** the Stay Motions.

I

From August 2015 to March 2016, Holmes worked as a representative at a call center located in Hampton, Virginia. (*See* First Am. Compl. at ¶27, ECF #34 at Pg. ID 831.) Holmes says that the Defendants "jointly employed" her and over "250 full-time representatives" at the Hampton call center. (*Id.* at ¶4, ECF #34 at Pg. ID 826.) Holmes alleges that Defendants paid her and the other agents who worked at the Hampton facility on an hourly basis. (*See id.* at ¶¶ 8, 27, ECF #34 at Pg. ID 826-27, 831.)

In this action, Holmes claims that the Defendants did not fully compensate her and the other agents at the Hampton call center for all of the time they worked, including time spent "logging into various computer programs" at the start of the work day and logging out of those programs at the end of the day. (*Id.* at ¶5, ECF #34 at Pg. ID 826.) Defendants deny Holmes' allegations. (*See* Answers to First Am. Compl., ECF ## 41, 42.) They further maintain that Holmes executed an arbitration agreement that (1) requires her to arbitrate (not litigate) her dispute with Defendants and (2) prohibits her from participating in a collective action. (*See*,

*e.g.*, ECF #47 at ¶1, Pg. ID 1038.) In relevant part, the arbitration provision provides:

> 1. **Agreement to Arbitrate**. Kelly Services, Inc. and its subsidiaries ("Kelly" or "Kelly Services") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise between me and Kelly Services, its related and affiliated companies, and/or any current or former employee of Kelly Services or any related or affiliated company. [….]
>
> 2. **Claims Subject to Agreement**. The "Covered Claims" under this Agreement shall include all common-law and statutory claims relating to my employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, gender, and any other protected status. I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Kelly Services and I hereby waive the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.
> [….]
>
> 8. **Waiver of Class and Collective Claims**. Both Kelly Services and I also agree that all claims subject to this agreement will be arbitrated only on an individual basis, and that both Kelly Services and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a claim on behalf of other individuals, and no arbitrator hearing any claim under this agreement may: (i) combine more than one individual's claim or claims into a single case; (ii) order, require, participate in or facilitate production of class-wide contact information or notification of

>> others of potential claims; or (iii) arbitrate any form of
>> a class, collective, or representative proceeding.

(ECF #15-1 at 2-3, Pg. ID 573-74.)

On January 20, 2017, Holmes filed the Certification Motion in which she asked the Court to:

- Conditionally certify her proposed FLSA collective;
- Implement a procedure by which Holmes could send notice of this action to "[a]ll current and former hourly call center agents who worked for Defendants [at the Hampton, Virginia call center] at any time in the past three years"; and
- "Require Defendants to identify all potential opt-in plaintiffs by providing their names, last known addresses, dates of employment, job titles, phone numbers, and e-mail addresses."

(Certification Mot. at 1, ECF #40 at Pg. ID 865.)[1]

Defendants have now moved to stay consideration of the Certification Motion. (*See* ECF ## 47, 49.) According to Defendants, the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit are currently considering the enforceability of arbitration agreements, like the one Holmes signed here, which purport to waive an employee's right to proceed in a

---

[1] Holmes initially moved for conditional certification of the collective on September 15, 2016. (*See* ECF #5.) Holmes withdrew that motion on December 13, 2016, and filed the First Amended Complaint on December 19, 2016. (*See* ECF ## 32, 34.) She then renewed the Certification Motion on January 20, 2017. (*See* ECF #40.)

4

collective civil action.[2] Defendants insist that resolution of these appeals in their favor would prohibit Holmes from proceeding with this action and would render the Certification Motion moot. Defendants therefore request that the Court stay consideration of the Certification Motion until after the Supreme Court and/or Sixth Circuit have ruled.

## II

District Courts have "broad discretion … as an incident to [their] power to control its own docket" to stay some or all of pending proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Indeed, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

Balancing the "competing interests" of both parties here, the Court concludes that a stay of consideration of the Certification Motion is not warranted. First, a stay could unfairly prejudice potential members of the collective. As Holmes aptly points out (*see* Resp. Br. at 12-14, ECF #50 at Pg. ID 1110-12), the

---

[2] *See Epic Systems Corp. v. Lewis*, Supreme Court Case No. 15-2997; *Ernst & Young v. Morris*, Supreme Court Case No. 16-300; *NLRB v. Murphy Oil USA, Inc.*, Supreme Court Case No. 16-307; *Gaffers v. Kelly Services, Inc.*, Sixth Circuit Case No. 16-2210.

longer the Court delays resolving the Certification Motion, the more likely it is that contact information for potential members of collective could become stale. This could make it impossible to inform potential collective members about this action and their potential claim(s). Moreover, if potential collective members are not promptly informed about this action, they could lose or dispose of documentary evidence (such as e-mails or hard copy documents) that could be useful to the prosecution of their claims.

Defendants insist that such prejudice is merely speculative and that Holmes has not identified any evidence of concrete harm that that the collective has suffered or could suffer. However, the stay Defendants request could last for months, if not longer, substantially increasing the likelihood that potential members of the collective could become unreachable or that relevant documents could be destroyed. Indeed, the Supreme Court will not consider the appeals referenced above until October 2017 at the earliest. (*See id.* at 6, ECF #50 at Pg. ID 1104.) Thus, because any stay the Court enters would be lengthy, the potential for prejudice would be exacerbated. Defendants also argue that potential collective members will not suffer any prejudice because they (Defendants) are willing to toll the statute of limitations. Defendants insist that such tolling would ensure that no member of the collective loses the ability to bring a claim after the Court lifts the stay. But while that offer solves one potential problem, it does nothing to mitigate

the risk of unfair prejudice from the loss of contact information or evidence that could result from a months-long (or longer) stay.

Second, Defendants would not be unfairly burdened were the Court to deny the Stay Motions. Denial of the Stay Motions would initially require Defendants to do nothing more than brief the issue of conditional certification. And even if the Court were to grant the Certification Motion, that would not unfairly burden Defendants. Granting the Certification Motion would require Defendants to produce only the "names, last known addresses, dates of employment, job titles, phone numbers, and e-mail addresses" of employees at the Hampton call center during the previous three years (*see* Certification Mot. at 1, ECF #40 at Pg. ID 865), information Defendants should readily have in their possession. That is not an unreasonable or unduly burdensome requirement. Moreover, "[t]he sole [legal] consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citing 29 U.S.C. § 216(b)). And Holmes has agreed to assume the burden of sending out that notice. Finally, once the collective is notified, the Court could then stay this action in its entirety pending the decisions of the Supreme Court and/or Sixth Circuit. While this procedure would cause

7

some burden to Defendants, the Court does not believe that the burden is unfair when compared to the prejudice facing the potential members of the collective.

This procedure is very similar to the one Judge David Lawson of this Court adopted in *Gaffers*. In *Gaffers*, an employee of Kelly Services filed a putative collective action making many of the same allegations that Holmes makes here. Specifically, he alleged that Kelly Services did not "pay[] him for the time it takes for him to log on to [Kelly Services'] computer applications so he can perform his job, and for certain other time spent solving technical connection problems." *Gaffers*, --- F.Supp.3d ---, 2016 WL 4445428, at *1 (E.D. Mich. Aug. 24, 2016). After Judge Lawson granted the plaintiff's motion for conditional certification, *see id.*, Kelley Services moved to stay his ruling (and prevent the plaintiff from sending notice to potential members of the collective) while it filed an interlocutory appeal in the Sixth Circuit. Judge Lawson granted Kelly Service's motion in part and denied it in part. (*See Gaffers v. Kelly Services, Inc.*, E.D. Mich. Case No. 16-10128 at Dkt. #104.)

Relevant here, Judge Lawson concluded that "the best course is to allow the present action to proceed through the opt-in period, which will permit potential plaintiffs to identify themselves….Once those individuals are identified and given an opportunity to join this lawsuit, further action in the case can be suspended until the appeal has been adjudicated." (*Id.* at 3, Pg. ID 2967.) Judge Lawson further

determined that allowing notice to be sent to potential collective members would not harm Kelly Services "because ultimately it would have to proceed with the litigation of their claims regardless of how the appeal is resolved" and that "proceeding with discovery and notice procedures" would "ensure the prompt and economical collective resolution of the unpaid overtime claims brought by those potential plaintiffs, regardless of whether they might be subject to arbitration in any event." (*Id.* at 4-5, Pg. ID 2968-69.)

The Court finds the reasoning and conclusions of Judge Lawson's decision in *Gaffers* persuasive and applicable here. *Gaffers* is also consistent with decisions of other district courts which have considered a certification motion first, *before* tackling the merits-issue of which members of a class or collective may be barred from participating in an action due to an agreement to arbitrate. *See*, *e.g.*, *In re Evanston Nw. Corp. Antitrust Litig.*, 2013 WL 6490152, at *5 (N.D. Ill. Dec. 109, 2013) ("[T]he sensible course….is to decide whether to certify the class without considering the possibility of arbitration…and then decide who must arbitrate. If it turns out that…[some potential class members] must arbitrate…the Court can always decertify, subclassify, or otherwise alter the class later"); *Sealy v. Keiser School, Inc.*, 2011 WL 7641238 (S.D. Fla. Nov. 8, 2011) (same). "Indeed, courts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination." *Romero*

*v. La Revise Associates, LLC*, 968 F.Supp.2d 639, 647 (S.D.N.Y. 2013) (internal quotation marks omitted; collecting cases). Because the cases currently pending before the Supreme Court and Sixth Circuit address the enforceability of arbitration agreements, which go to the merits of Defendants' opposition to Holmes' claims, the Court concludes those cases should pose no bar to the Court's initial consideration of the Certification Motion.

### III

For the reasons stated above, **IT IS HEREBY ORDERED** that the Stay Motions (ECF ## 47, 49) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants shall file their responses to the Certification Motion within 28 days of the date of this Order.

**IT IS FURTHER ORDERED** that Defendants may depose Holmes concerning the contents of, and foundation for the assertions in, her declaration (*see* ECF #40-3) prior to filing their responses to the Certification Motion.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated: March 22, 2017 UNITED STATES DISTRICT JUDGE

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 22, 2017, by electronic means and/or ordinary mail.

                                              s/Holly A. Monda
                                              Case Manager
                                              (313) 234-5113